Jesús Estela, Plaintiff and Appellant, *v.* Mario Mercado e Hijos, Defendant and Appellee.

No. 5855.   Argued January 17, 1933.—Decided February 17, 1933.

*López de Tord & Zayas Pizarro* for appellant.   *Tous Soto & Zapater* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

This is an action brought to remove and destroy a public nuisance. The defendant is charged with having closed a road which, according to the plaintiff, has been dedicated to the use of the public from time immemorial. It is alleged in the complaint that the defendant partnership is the owner of a farm called "Buena Vista," which is crossed by the insular highway which connects Guayanilla with Ponce and which is located in the ward of Playa de Guayanilla; that in front of the stone which marks kilometer 5, hectometer 3 of said highway, at a place known as Peñoncillo, there is the entrance to a road which crosses the lands of the Buena Vista plantation and joins the Guayanilla-Ponce highway to the settlement called La Playa de Guayanilla; that said road is about 6 meters wide and a little more than 200 meters long; that this road has been used from time immemorial by all of the townspeople of Guayanilla and especially by those of the Playa de Guayanilla who thereby have access to the highway; that the owners of the Buena Vista plantation have always respected the road, maintaining a wire fence on each side to separate it completely from the lands of the plantation, for the benefit of the public; that the plaintiff, Jesús Estela, is the owner of two farms, one of 70 acres (*cuerdas*) and another of 50, located in the ward of Las Magas of the Municipality of Guayanilla, which he has planted in sugar cane which, by virtue of a contract with Central Bocachica in the ward of Capitanejos of Juana Díaz, he transports on the railroad of the American Railroad Company of Puerto Rico; that the said American Railroad Company agreed to establish a loading station for the transportation of said cane in a spot ad-

jacent to the settlement of La Playa de Guayanilla, which was discontinued when the road leading to said loading station was closed by the defendant herein, Mario Mercado and Sons; that the railroad company is willing to continue and finish said loading station and that in order to carry the cane to the said spot, the plaintiff must pass over the said road with oxcarts; that in December, 1929, the defendant placed a gate at the entrance to the said road, which he keeps closed and locked, said defendant refusing to keep the said road open in spite of the protest of the neighbors, including the plaintiff herein, and that the plaintiff cannot carry his cane to the loading station which is being built without using the said road which the defendant is obstructing; that this is the first time that the said defendant has prevented transit on the said road and that said obstruction constitutes a public nuisance, since it prevents free transit on a municipal road in which the defendant does not have a greater interest than that of the community, said gate likewise constituting a private nuisance, since it prevents the plaintiff individually from using the said road, and that the acts of the defendant are due to the fact that the plaintiff had ceased to be a grower (*colono*) for the defendant and had made a grinding contract with another mill, the defendant thus retaliating against the plaintiff herein and that for this reason the plaintiff, in order to fulfill his contract with the Central Bocachica, has been obliged to carry his cane a long distance to the urban zone of Guayanilla, which distance does not allow the plaintiff to transport in a regular manner, wherefore a part of said cane is lost because it becomes overripe, and the action of the defendant in obstructing the said road has caused the plaintiff damage which is considerable, irreparable or difficult to determine, that the plaintiff has no expeditious and efficacious remedy in the ordinary course of the law, except the action to abate the said nuisance; that the defendant, in spite of having been required to do so, has refused to remove the said gate and that a pecuniary compensation in this case does

not constitute an adequate remedy, the abatement of the said nuisance being necessary in order to avoid a multiplicity of actions.

In its answer the defendant denies the public nature of the road which has been closed, alleging that the said road is a private roadway of the Buena Vista plantation which begins near its northern boundary and crosses the said farm from north to south, crossing the insular highway and ending at the sea. It denies that the said road has been used from time immemorial and alleges that many years ago, the transit of carts was interrupted because of the construction of the tracks of the railroad which cut it by an embankment which rises to a considerable height above the level of the road and above a culvert of 2.60 meters.

The District Court of Ponce rendered judgment for the defendant, with costs. Feeling aggrieved by the judgment rendered, the plaintiff took the present appeal. We will examine first the fundamental questions raised by the appellant in the third, fourth, and fifth errors and we will, in passing, touch upon some points discussed under the first error which deal with the ocular inspection.

The plaintiff alleges that the lower court erred in dismissing the complaint on the theory that the action brought is based on a right of way in favor of his property, when what the plaintiff really asks in this case is the abatement of a public nuisance which prevents not only the plaintiff but also the other neighbors of the place from using the said road. The appellant also alleges that the court erred in not deciding that the said road has been dedicated to public use from time immemorial and that therefore the dominion of the same has prescribed in favor of the public, as a result of such dedication of the road, according to the doctrine laid down by this Court in the case of *Saldaña et al.* v. *Municipal ·Council of San Juan,* 15 P.R.R. 36.

There is no doubt that the end pursued by the plaintiff is the abatement of a nuisance which, according to his allega-

tions, prevents the neighbors and the plaintiff himself from using a road which from time immemorial has been dedicated to the public. The lower court states in its findings that the said road begins at the old factory of the Buena Vista plantation and ends at the Playa. In the minutes of the ocular inspection the judge states that the entrance to this road is through the yard of the Buena Vista plantation and not from the highway. The counsel for the plaintiff argue that these conclusions of the court are not justified, since the insular highway runs between said plantation and the road. We agree with counsel for the appellant that the only thing which the court could observe in the ocular inspection is that there is a road which leads from the factory of the plantation to the highway, and that near it there is a road which begins at the highway and leads to the sea, which is the road in litigation. The observation is made, however, that the court could not say that one road or different roads were involved because, in order to ascertain this, it would have had to depend upon the statements of persons who had not taken an oath. We should not forget that the ocular inspection was made after the testimony had been heard, when the court had already heard the testimony of the plaintiff himself, Jesús Estela, and of his witness, Ramón Lugo, and the testimony of the witnesses for the defendant. Estela tells us, on page 42 of the transcript of the evidence, that the road starts at the Buena Vista plantation, crosses the highway and ends at the Playa, if the seashore is followed, and his own witness, Ramón Lugo, testifies that the road is on land belonging to the Buena Vista plantation, and that the road starts on the plantation before reaching the highway. We do not believe that the court erred in saying that the entrance to the road was through the yard of the plantation, or that the road began at that point, if such was its observation, and continued, after crossing the highway, up to the railroad track; but even if it is admitted that this is a conclusion, and not a statement of fact, there is no ground for assuming that the court based itself on state-

ments made to it without the sanction of an oath, when it already had the benefit of the testimony of the plaintiff and his witness and of the evidence of the defendant which is ample and clear on this point.

In its findings, the lower court also states that this road was opened by a certain Villoch for the purpose of carrying sugar and molasses to the Playa, and that it has not been used as an outlet to the sea since the construction of the railroad in 1891. The witnesses for the plaintiff, as well as those for the defendant, agree that certain persons bearing the surname Villoch were the former owners of the Buena Vista plantation. Balbina Villoch, witness for the plaintiff, says that she was born a month after the cholera epidemic and that she belonged to the Villoch family. In answer to the questions of the attorney for the appellant she says that that road was made by Emiliano Villoch in order that people might pass, and when questioned by the attorney for the defendant whether Emiliano Villoch opened this road for the transportation of his sugar and molasses in carts in order to ship it to Ponce in barges, she answers that he did and that the people also passed there. The witness for the defendant, Ercilio Forgas, who said that he was 115 years old, testifies that it was Pedro Villoch who opened the road, and Emiliano, his son, who fixed it. According to this witness, the road was opened for the purpose of transporting sugar to the entrance of the dock. This is the evidence which the lower court had under consideration when it said that the road was opened by Villoch. It cannot be denied that the evidence tends to show that the road was opened by the former owners of the Buena Vista plantation for their benefit and that the public was allowed to use the said road. The conclusion of the court that this road has not been used since it was obstructed by the railroad track in 1891 is supported by the evidence of both parties, in respect to the passage of carts over the track to reach the spot called "La Playita." It is alleged that people continue to use the road on foot in spite

of the obstruction and we believe that it has been proved that some people continue to pass there. What admits no doubt is that carts cannot pass and that the land occupied by the tracks is the private property of the American Railroad Company. At least the plaintiff admitted this in accepting the license granted to him by the said corporation to cross the track at the exact point where people are said to cross the track on foot. Estela says that it is necessary to make an embankment in order that carts may go up and over to the other side of the railroad. The license granted by the railroad company to Estela was in writing and was signed by the plaintiff himself and by the general manager of the railroad company, E. Jiménez. In the said license it is said that "the road of the petitioner (referring to the plaintiff, Jesús Estela) begins at the highway and at a distance of 100 meters from the beginning it crosses the company's track at an angle of 90 degrees and that the petitioner is hereby authorized to cross the company's track at the said point at kilometer 257/615 of the main track, it being understood that this passage is private, for the exclusive use of the petitioner, his agents or employees." In the said license it is also said that Estela shall place and keep at his expense, a notice prohibiting trespassing, at the entrance to the road and on each side of the track, five meters from its center. The license is good for two years, is personal and cannot be transferred to any other person without the written consent of the company which reserves the right to cancel said license at any time, after notice of thirty days to the petitioner.

In this document, Estela recognizes the right of the company to prohibit use of the road across the track, inasmuch as he agrees that passage be prohibited and accepts a concession of a personal and private nature. It does not appear from the document signed by Estela that this prohibition is limited exclusively to carts. It simply imposes on the plaintiff the obligation of placing a warning prohibiting trespassing. The license to cross the track is limited to the

months of the sugar crop, in order that Estela may pass with his cane, the road remaining closed during the rest of the year. These precautions which the railroad company adopts to protect the interests of the public and for its own protection, do not seem to indicate that the company was previously minded to allow the public in general to cross the track, as the plaintiff alleges. The testimony of Manuel Jovet, head of the traffic division of the railroad, tends to show this. He states that the rules of the railroad do not permit the crossing of the track, but that many things which are prohibited are done here.

The position of Estela is somewhat difficult to explain. He maintains that the public uses this road and at the same time he accepts that passage be prohibited to this same public, whose rights he invokes to bring this action, and he agrees to cooperate with the company, obligating himself to place the required warning. This road has, from one end to the other, that is, from the highway to the track, a length of 100 meters, as admitted in the said license. The track is about two and one-half meters above the road level. Without crossing the track the road leads nowhere except to the Buena Vista plantation whose land it crosses. If we do not misinterpret the license signed by Estela, the latter accepts that that be done, for his exclusive benefit, which he wishes to prohibit the defendant from doing, that is, closing the road, with the sole difference that in one case the said road is closed by a gate at the entrance from the highway and in the other by a warning placed at the other end, on the tracks. This road, according to the lower court, was not considered as a municipal road either by the Municipality of Guayanilla or by the Department of the Interior. The Mayor of Guayanilla, Benigno Rodríguez, testifies that he has received no complaint whatever as a result of the closing of the road and that he has never had official or extra-official notice that any claim has been presented by any inhabitant with respect to said road.

Moreover, even where the nuisance is in reality of a public nature, we are of the opinion that a private citizen, in order to have the right to abate it, must allege and prove the existence of a special injury. In the case of *Saldaña et al.* v. *Municipal Council of San Juan, supra,* four judges only took part in the decision, two of whom were of the opinion that the judgment of the lower court should be reversed and the other two that it should be affirmed, and as a result the said judgment subsisted, as rendered by the trial court. If the opinion of the Court delivered by Mr. Justice McLeary is studied carefully it will be observed that the latter maintained that the plaintiff alleged a special interest and that they had suffered special injuries. In said opinion, Mr. Justice McLeary states that the plaintiff did not seek simply to enforce a public right, but that they brought an action for redress of certain special injuries that are described in the opinion. Mr. Justice McLeary insists upon this view, as may be seen from that part of his opinion which appears on pages 43, 44, 46 and 47, of volume 15 of the Reports of this Court. Mr. Justice Wolf, in his dissenting opinion, maintains that no special injury in the legal sense of the phrase was alleged or proved. The difference which may be noted between the opinion of the Court and that of the dissenting judge deals with a question of fact rather than with a question of law. It seems that both opinions agree in principle, although Mr. Justice McLeary upheld the exclusive right of the Attorney General to bring the action when no special damages are alleged. We think that this doctrine should be maintained because it is so required by the law in force, and in order to avoid a multiplicity of suits.

Section 277 of the Code of Civil Procedure, which describes what constitutes a nuisance, authorizes any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, to bring an action for its abatement. Section 12 of our Injunction Act reads as follows: "An injunction may be granted upon the petition of the

People of Puerto Rico, to enjoin and suppress the keeping and maintenance of a common nuisance. The petition shall be verified by the *fiscal* of the district in which the common nuisance exists, or by the Attorney General, upon information and belief, and no bond shall be required."

The action brought in this case, for the purpose of abating an allegedly public nuisance, partakes of the nature of a mandatory injunction. In 1905, section 731 of the Code of Civil Procedure of the State of California, which is very similar to section 12 of our Injunction Act, was amended. The amendment provides that an action may be brought in the name of the People of the State of California for the abatement of a public nuisance, by the prosecuting attorney for the county, or by the corporation counsel of the city or town where the nuisance exists and that both the county prosecuting attorney and the corporation counsel of the city shall bring the action when it is so ordered by the board of superintendents of the county or by the legislative body of the city or town. Section 12 of our Injunction Act, like the section we have just cited, authorizes an action in the name of the People of Puerto Rico and provides that the petition shall be verified by the district attorney for the district in which the nuisance exists or by the Attorney General. In our opinion it is the People upon the initiative of its legal representatives, who should bring the action for the abatement of the public nuisance, unless special damages have been caused to a private citizen in which case the citizen would have a right of action in accordance with section 277 of the Code of Civil Procedure.

In the case of *Johnson* v. *V. D. Reduction Co.*, 175 Cal. 63, it was alleged by the appellants that although it is true that section 731 of the Code of Civil Procedure expressly recognized the right of a private person whose property is injuriously affected or whose personal enjoyment is impaired to bring suit for the abatement of a nuisance, the amendment to said section, enacted in 1905, authorizing the prosecuting

attorney or counsel for the city or town to bring the action, served to deprive a private citizen of the right to bring suit to obtain the abatement of a public nuisance. The Supreme Court of California, in passing on the question raised, expressed itself as follows:

"Clearly, it was not the intention of the legislature by enacting the amendment to abridge or affect the rights given by the section prior to the amendment to private persons in maintaining actions for the abatement of nuisances, whether of a private or public nature, when the effect thereof seriously impairs their health, abridges their right to personal enjoyment, or renders their dwellings and homes unfit for occupation."

We have cited this decision in order to show that even in the State of California it was believed that the amendment of 1905 took away from the private citizen the right to obtain the abatement of a public nuisance under section 731 of the California Code, which in this respect is similar to section 277 of our code. The Supreme Court of that State held that when special damages are caused to a private person, he may bring the action. The following paragraph which we have taken from volume 20 of California Jurisprudence, page 272, clearly expresses the doctrine prevailing in said State, where the existing legal provisions are identical with those in force in Puerto Rico:

"The injury which results from a public nuisance may be redressed, as a general rule, only at the suit of the people. 'A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise.' This language of the code expresses a fundamental and universal rule, and the authority in support of it is uniform. The rule applies alike to suits in equity to abate or enjoin nuisances, and to actions at law for damages. In order that the action may be maintained, the special damage to the plaintiff must be the proximate result of the unlawful conduct or condition. The amendment of 1905 to section 731 of the Code of Civil Procedure, by which district and city attorneys are empowered of their own motion to institute actions to abate public nuisances, and are compelled to do so on direction of local legislative authorities, did not affect the right previously given by the section to private

persons to sue for the abatement of nuisances which occasion them special injury. While asseverating that the individual may attack a public nuisance only on the ground of special injury, it has been observed that relief is granted not solely because the nuisance is peculiar as to him, but also by reason of the fact that the public will be benefited. However this may be, it is settled that if the nuisance be regarded as a public one occasioning special injury it will be abated in toto,—whereas, if the wrong is to be considered as a private nuisance, the remedy is limited to the protection of the plaintiff's private right. From this, in turn, would follow a multiplicity of suits—one by each person aggrieved.''

In accordance with the jurisprudence just cited, the action for the abatement of a nuisance cannot prevail, even though the existence of a public nuisance is shown, unless the person seeking the abatement shows that he has suffered special damages. Are these circumstances present in the instant case? Estela obtained a license from the railroad company to pass his carts across the track when the same should be placed on the same level with the road upon the construction of certain works which were never finished due to the fact that the road was closed. In the document the road is not described as municipal or public, but as the road of the petitioner. Estela himself signed the document. The company reserves the right to revoke the license. Estela accepts the exclusive license to pass his carts across the track, and in order to receive this special benefit, to the exclusion of the public, he asks that the road be opened. The special damages alleged in the complaint depend upon this license which was granted by a third party. The testimony with respect to the special damages is openly conflicting. The lower court which heard the testimony of the witness tells us in its opinion that the plaintiff finished cutting and hauling his cane, that he has easy access to the railroad station and that he has suffered no damages.

It is alleged that the lower court committed certain errors in its written statement of its observations at the inspection or view. The court said that the road in controversy was

located within the lands of the Buena Vista plantation. That is true. Estela himself states in his complaint that the road crosses the Buena Vista plantation. We agree that the court made certain unwarranted observations, such as those respecting the oxen of Estela, and we also consider that it was out of place for it to say that the road in controversy was not at all necessary for the transportation of cane from Estela's property, and that Estela's cane is taken to the landing station of the American Railroad Company. In a personal inspection the judge should limit himself to the description of the place with the greatest possible accuracy without expressing any judgment on the facts observed, especially when such a judgment may indicate the final decision to be rendered. The court should have reserved its conclusions for subsequent expression in its opinion. These conclusions, however, do not have the importance attributed to them by the plaintiff. A careful study of the pleadings and the evidence produced in this case leads to the conclusion that, with or without the personal inspection, a judgment for the defendant had to be entered.

A map prepared by Alberto Hernández, an engineer, was admitted in evidence over the objection of the plaintiff. This map shows the boundaries of the lands of the American Railroad Company with the road in controversy. The testimony of engineer Hernández dealt principally with the difficulty, in his opinion, of constructing an embankment over which carts could cross the tracks, using only the lands of the railroad company. This evidence is not important and plays no part in the decision of the case.

It is finally alleged that the court erred in adjudging the plaintiff to pay the costs. We do not think that the award made by the lower court is unjustified.

The judgment appealed from must be affirmed.